UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IGLESIAS REALTY, LLC § | |
|         *Plaintiff* § | |
| § | |
| v. § | Civil Action No. 4:18-cv-2419 |
| § | |
| CERTAIN UNDERWRITERS AT § | |
| LLOYD'S § | |
|         *Defendant* § | |

## PLAINTIFF'S ORIGINAL COMPLAINT & JURY DEMAND

Plaintiffs IGLESIAS REALTY, LLC ("Iglesias" or "Plaintiff") files this Original Complaint & Jury Demand against Defendant CERTAIN UNDERWRITERS AT LLOYD'S ("Lloyd's" or "Defendant") and would respectfully show the following:

### Parties

1. Iglesias Realty, LLC is a domestic limited liability company located and operating in the State of Texas.

2. Upon information and belief Lloyd's is a foreign surplus lines insurance company engaged in the business of insurance in Texas, operating for the purposes of accumulating monetary profit. Lloyd's regularly conducts the business of insurance in a systematic and continuous manner in the State of Texas. Lloyd's may be served with process by serving its registered agent certified mail, return receipt requested, to **MENDES & MOUNT, 750 Seventh Avenue, New York, NY 10019-6829.**

### Venue & Jurisdiction

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Plaintiff and Defendant and the amount in controversy exceeds the sum of seventy-five thousand dollars ($75,000.00), exclusive of interests and costs.

1

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because this action concerns real property and a business located and operating in Harris County, Texas, and all or a substantial part of the events giving rise to the claim described herein occurred in Harris County, Texas. In particular, the insurance policy at issue and of which Plaintiff is a beneficiary was to be performed in Harris County, Texas and the losses under the policy (including payments to be made to Plaintiff under the policy) were required to be made in Harris County, Texas. Further, investigation, including communications to and from Defendant and Plaintiff (including telephone calls, mailings, and other communications to Plaintiff) occurred in Harris County, Texas.

## Factual Background

### *The Property*

5. Iglesias owns and operates the commercial property located at 6808 Easthaven Blvd., Houston, Texas 77017 in Harris County, Texas (the "Property").



The Property is a one-story building situated on 60,000 square feet of land with 8,125 square feet of interior space. The building houses a banquet hall, office space, and kitchen facilities.

*The Policy*

6. Prior to August 27, 2017, Iglesias paid annual premiums, assessments, fees, surcharges, and taxes to Lloyd's to acquire comprehensive commercial insurance coverage for the Property and the business under Lloyd's Policy No. LV10532 (the "Policy"). The Policy provides coverage for Iglesias' business and the Property, for covered damages that occur during the Policy Period, from August 17, 2017 through August 17, 2018. In exchange for Iglesias' premium payment, the Policy includes the following limits and coverages, in relevant part:

```
Policy Number: LV10532
                    Effective Date: 8/17/2017  Expiration Date: 8/17/2018
COVERED PREMISE(S)
6808 Easthaven Blvd Houston, TX 77017

COVERED PROPERTY (Insurance at the descriped premises applies only for coverage for which a limit of
insurnace is shown)   ACV = Actual Cash Valuation; RC = Replacement Cost valuation  (Deductibles - See Form CP 03 20)

     Location #1 Special Form   Harris County / PC 1 / 80% Co-Insurance
     Covered      Equipment Breakdown
     Included     Theft, Building**
     Included     Theft, BPP**
     $505,000     Per Occurrence, Building - ACV (ISO 4) Deductible: $2,500
     $15,000      Per Occurrence, Business Personal Property - ACV Deductible: $2,500
     $25,000      Per Occurrence, Sign - ACV Deductible $2,500

     Wind, Hail & Hurricane Deductible Per Occurrence   $26,000
     Protective Safeguard Symbols (VP09)    Symbols that apply: F
```

7. As evidenced by the Declarations Page, the Policy provides coverage to the Property's physical structure on an actual cost value basis for damages up to $505,000.00. *See* Ex. A, Policy, at Declarations Pages

8. The Policy also contains a Deductible provision that confirms coverage for damages to the interior of the Property that result from wind, hail, and hurricane damage. *See id.,* Policy.

3

*Hurricane Harvey*

9. On or about August 25, 2017, Hurricane Harvey, recognized as one of the most devastating natural disasters in United States history, made landfall on the Texas coast as a Category 4 hurricane with wind speeds of up to 150 miles per hour. Hurricane Harvey's wind and rain continued to travel through the southeast part of Texas, inflicting billions of dollars in damages to private and public property in Fort Bend County and Harris County alone. The Texas Division of Emergency Management incurred more than $439 million in costs associated with debris removal, public property damage, and police/EMS response immediately after Harvey. Texas Governor Greg Abbott has estimated that Hurricane Harvey's damages will total an historic $180 billion.

*Iglesias makes an insurance claim for Harvey related damage*

10. As a result of Harvey's extreme winds and rain when it hit Harris County and specifically the Property, on or about August 27, 2017, the Property was substantially damaged. Sizeable portions of the Property's roof were compromised by wind. As a result, there was also interior damage to ceilings, walls, and flooring. The following photographs taken after Harvey depict some of the damage:




11.     There was also significant damage to the roof and insulation:




12.     The Property—specifically the roof, ceilings, walls, and flooring—were substantially damaged by Harvey. Yet as devastating as the physical damage was, Iglesias felt fortunate to be protected by over $505,000.00 in insurance coverage it had procured to insure the

5

Property from precisely this type of catastrophe. Immediately after the storm, Iglesias promptly filed a claim with Lloyd's, alerting them to the extensive damages. This sense of security, borne of a pricey contractual relationship, would prove illusory as Lloyd's began their investigation and handling of the claim.

*Lloyd's retains adjusters and consultants to begin adjusting the claim*

13. Because neither Lloyd's does not have one single employee in Texas, they assigned Gulf Coast Claims Services ("GCCS") to handle the claim. GCCS is one of several adjusting firms, often referred to as a third-party administrator, that have sprouted to service the foreign, absentee insurance market led by Lloyd's. Although Texas law provides that an insurer has a "non-delegable duty" to responsibly handle claims, delegate is precisely what foreign insurance entities like Lloyd's do on a regular basis. Claims decisions are delegated to third-party administrators like GCCS with limited oversight by Lloyd's. Claim settlement authorities are granted to these entities, but they are done on a restrictive, one-size-fits all limited basis that bears no relationship to the claim at hand. Oftentimes, claims are not even reported to the actual insurance company until a third-party administrator such as GCCS decides it rises to a level that merits the insurer's attention. In this type of absentee insurer environment, claims standards and guidelines become arbitrary and are routinely outsourced. Adjuster training is deferred, or simply never happens. Financial incentives are turned on their head, as the third-party administrators and adjusters, and the managers who oversee them, are compensated with bonuses and incentives tied to profitability manufactured by claim denials. The absentee structure of Lloyd's is such that it is virtually impossible to comply with Texas law concerning claims handling guidelines and the prohibition on delegating these guidelines. But for foreign insurance entities shielded by

oceans and a vacuum of regulatory oversight, delegation to third party administrators has become the new normal.

***Iglesias works hard to document its damages for Lloyd's but received a denial.***

14. Lloyd's utilized its preferred vendor, GCCS, to handle adjustment of the claim on its behalf. GCCS's adjustment was disorganized, rife with delays, and left many of the insured's questions unanswered. Iglesias hired its own representative to assist with the claims process, but GCCS's adjusters continuously ignored Iglesias' representative in an effort to intentionally mislead the insured about the claims process and ultimately deny the claim.

15. GCCS shuffled the claim around to several adjusters internally without keeping the insured apprised of what was going on. Despite receiving the claim on August 31, 2017, just days after the storm while the Property was in disrepair, GCCS did not inspect the Property until October 25, 2017. The initial GCCS and Lloyd's adjuster assigned to the claim was David Barr, but Mr. Barr briefly communicated with Iglesias' representative until he stopped responding and simply disappeared. GCCS and Lloyds refused to provide any scopes of damage or answer any questions about the status of the claim, despite Iglesias' multiple requests. To this day, no documentation regarding that single inspection has been provided to the insured. Greg Herring, another adjuster with GCCS, also failed to complete an adequate inspection and refused to acknowledge all the damages to the Property. At some point in January of 2018, yet another adjuster who was re-assigned the claim, Paul Bales, contacted the insured directly, without consulting the insured's appointed representative, and had no knowledge of any of the prior claims process. In March of 2018, seven months after Harvey substantially damaged the Property and after the claim was made, Mr. Bales still refused to scope the damages on behalf of Lloyd's.

At no point were any estimates or scopes of damages to the Property prepared or provided to the insured. Moreover, Lloyd's refused to retain any appropriate consultants to evaluate the claim

16. To this day, Lloyd's has refused to pay for any covered damages under the Policy.

*Lloyd's ignores Iglesias' demand letter*

17. On June 1, 2017, Governor Abbott signed House Bill 1774 into law as Section 542A of the Texas Insurance Code. This new law was sponsored by approximately sixty state representatives and senators and contains important consumer protections against a variety of unscrupulous practices. Particularly, Section 542A.003 requires detailed, comprehensive presuit notice that is intended to make the claims and litigation processes more transparent and potentially even avoid unnecessary lawsuits. Upon receiving notice, an insurer has a right to conduct an inspection, and even make an offer to avoid litigation. When utilized properly, Section 542A should assist business consumers like Iglesias to avoid protracted litigation over a clear claim.

18. In compliance with Section 542A.003, Iglesias gave its pre-suit notice to Lloyd's on April 30, 2018. The pre-suit notice provided a comprehensive outline of Iglesias' claims and damages, quantified its loss, and even offered to waive a formal claim for attorneys' fees if the contractual amounts were paid promptly.

19. Lloyd's did not substantively respond to the pre-suit notice.

**Count 1 – Violations of Texas Insurance Code, Section 541**

20. Iglesias re-alleges and incorporates each allegation contained in Paragraphs 1-19 of this Complaint as if fully set forth herein.

21. Lloyd's failed to attempt to effectuate a prompt, fair, and equitable settlement of a claim with respect to which liability has become reasonably clear, in violation of Texas Insurance Code Section 541.060 (a)(2)(A).

22. Lloyd's failed to adopt and implement reasonable standards for prompt investigation of the claim arising under its policy.

23. Lloyd's failed to provide promptly a reasonable explanation, in relation to the facts or applicable law, for the denial of a claim, in violation of Texas Insurance Code Section 541.060 (a)(3).

24. Lloyd's refused to pay the claim without conducting a reasonable investigation with respect to the claim, in violation of Texas Insurance Code Section 541.060 (a)(7).

25. Lloyd's misrepresented the insurance policy under which it affords property coverage to Iglesias, by making an untrue statement of material fact, in violation of Texas Insurance Code Section 541.061 (1). Lloyd's misrepresented the insurance policy to Iglesias, by making an untrue statement of material fact, in violation of Texas Insurance Code Section 541.061 (1).

26. Lloyd's misrepresented the insurance policy under which it affords property coverage to Iglesias by failing to state a material fact that is necessary to make other statements made not misleading, in violation of Texas Insurance Code Section 541.061 (2). Defendant misrepresented the insurance policy to Iglesias by failing to state a material fact that is necessary to make other statements made not misleading, in violation of Texas Insurance Code Section 541.061 (2).

27. Lloyd's misrepresented the insurance policy under which it affords property coverage to Iglesias by making a statement in such manner as to mislead a reasonably prudent person to a false conclusion of material fact, and failing to disclose a matter required by law to be

disclosed, in violation of Texas Insurance Code Section 541.061 (3) and Texas Insurance Code Section 541.002 (1). Defendant misrepresented the insurance policy to Iglesias by making a statement in such manner as to mislead a reasonably prudent person to a false conclusion of material fact, and failing to disclose a matter required by law to be disclosed, in violation of Texas Insurance Code Section 541.061 (3) and Texas Insurance Code Section 541.002 (1).

28. Lloyd's knowingly committed the foregoing acts, with actual knowledge of the falsity, unfairness, or deception of the foregoing acts and practices, in violation of Texas Insurance Code Section 541.002 (1).

**Count 2 – Violations of the Texas Insurance Code, Section 542**

29. Iglesias re-alleges and incorporates each allegation contained in Paragraphs 1-28 of this Complaint as if fully set forth herein.

30. Lloyd's failed to acknowledge receipt of the claim in violation of Texas Insurance Code Section 542.055 (a)(1).

31. Lloyd's failed to timely commence investigation of the claim or to request from Iglesias any additional items, statements or forms that Lloyd's reasonably believed to be required from Iglesias in violation of Texas Insurance Code Section 542.055 (a)(2)-(3).

32. Lloyd's failed to notify Iglesias in writing of the acceptance or rejection of the claim not later than the 15th business day after receipt of all items, statements and forms required by Defendants in violation of Texas Insurance Code Section 542.056(a).

33. Lloyd's delayed payment of Iglesias' claim in violation of Texas Insurance Code Section 542.058(a).

34. Each of the actions described herein were done "knowingly" as that term is used in the Texas Insurance Code and were a producing cause of Iglesias' damages.

### Count 3 – Statutory Interest

35. Iglesias re-alleges and incorporates each allegation contained in Paragraphs 1-34 of the Complaint as if fully set forth herein.

36. Iglesias makes a claim for statutory interest penalties along with reasonable attorneys' fees for violation of Texas Insurance Code Subchapter B pursuant to Texas Insurance Code Section 542.060.

### Count 4 – Breach of Contract

37. Iglesias re-alleges and incorporates each allegation contained in Paragraphs 1-36 of the Complaint as if fully set forth herein.

38. As outlined above, Lloyd's breached its contract with Iglesias by refusing to pay for covered damages under the Policy. As a result of Lloyd's breach, Iglesias suffered legal damages.

### Count 5 – Breach of duty of good faith & fair dealing

39. Iglesias re-alleges and incorporates each allegation contained in Paragraphs 1-38 of the Complaint as if fully set forth herein.

40. Lloyd's, as the property coverage insurer, had a non-delegable duty to deal fairly and in good faith with Iglesias in the processing of the claim. Lloyd's breached this duty by refusing to properly investigate and effectively denying insurance benefits. Lloyd's knew or should have known that there was no reasonable basis for denying or delaying the required benefits. As a result of Lloyd's breach of these legal duties, Iglesias suffered legal damages.

### Count 6 – Punitive Damages for Bad Faith

41. Iglesias re-alleges and incorporates each allegation contained in Paragraphs 1-40 of this Complaint as if fully set for herein.

42. Defendant acted fraudulently and with malice (as that term is legally defined) in denying and delaying Iglesias' claim for benefits. Further, Defendant had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of Iglesias.

### Count 7 – Violations of Texas Deceptive Trade Practices Act

43. Iglesias re-alleges and incorporates each allegation contained in Paragraphs 1-42 of this Complaint as if fully set forth herein.

44. The Texas Deceptive Trade Practices Act (DTPA) provides additional protections to consumers who are victims of deceptive, improper, or illegal practices. Defendant's violations of the Texas Insurance Code create a cause of action under the DTPA. Defendant's violations of the Texas Insurance Code, as set forth herein, specifically violate the DTPA as well. Defendant has also acted unconscionably, as that term is defined under the DTPA.

45. Each of the actions described herein were done "knowingly" as that term is used in the DTPA and were a producing cause of Iglesias' damages.

### Resulting Legal Damages

46. Iglesias is entitled to the actual damages resulting from the Defendant's violations of the law. These damages include the consequential damages to its economic welfare from the wrongful denial and delay of benefits including loss of the property and business; and the other actual damages permitted by law. In addition, Iglesias is entitled to exemplary damages.

47. As a result of Defendant's acts and/or omissions, Iglesias has sustained damages in excess of the minimum jurisdictional limits of this Court.

48. Iglesias is entitled under law to the recovery of prejudgment interest at the maximum legal rate.

49. Defendant's knowing violations of the Texas Insurance Code and DTPA entitle Iglesias to the attorneys' fees, treble damages, and other penalties provided by law.

50. Iglesias is entitled to statutory interest as damages under the Texas Insurance Code 542.060(c).

51. As a result of Defendant's acts and/or omissions, Iglesias has sustained damages in excess of the jurisdictional limits of this Court.

52. Iglesias is entitled under law to the recovery of prejudgment interest at the maximum legal rate.

53. Iglesias is entitled to the recovery of attorneys' fees pursuant to Tex. Civ. Prac. & Rem. Code §38.001, Texas Insurance Code 542.060(a)-(c), and Tex. Bus & Commerce Code §17.50.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully request that Plaintiff have a judgment against Defendant for actual damages in excess of the minimum jurisdictional limits of this Court, pre- and post-judgment interest as allowed by law, costs of suit, and all other relief, at law or in equity, to which Plaintiff may be entitled.

Respectfully submitted,

**RAIZNER SLANIA, LLP**

_____
JEFFREY L. RAIZNER
State Bar No. 00784806
Southern District Bar No. 15277
ANDREW P. SLANIA
State Bar No. 24056338
Southern District Bar No. 1057153
AMY B. HARGIS

State Bar No. 24078630
Southern District Bar No. 1671572
BEN WICKERT
State Bar No. 24066290
Southern District Bar No. 973044
efile@raiznerlaw.com
2402 Dunlavy Street
Houston, Texas 77006
Phone: 713.554.9099
Fax:   713.554-9098
**ATTORNEYS FOR PLAINTIFF**

## JURY DEMAND

*Iglesias Realty, LLC hereby demands a trial by jury, a right enshrined in the Constitution of the United States of America and the State of Texas and preserved by the sacrifices of many. The necessary jury fee has been paid.*

_____
**ANDREW P. SLANIA**